Opinion issued August 6, 2026



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-24-00320-CV

———————————

**JOHN TOMASZEWSKI AND HEATHER BRYAN, Appellants**

**V.**

**K. HOVNANIAN OF HOUSTON II, LLC D/B/A BRIGHTON HOMES,**
**Appellee**

---

**On Appeal from the 333rd District Court**
**Harris County, Texas**
**Trial Court Case No. 2020-12139A**

---

## MEMORANDUM OPINION

Appellants, John Tomaszewski and Heather Bryan, sued Appellee, K. Hovnanian of Houston II, LLC, which does business as Brighton Homes, for construction defects that allegedly caused a mold problem in their home. After the

trial court imposed more than $50,000 in monetary sanctions against Appellants for discovery abuse, they nonsuited their claims. They now appeal the sanctions.

Appellants ask us to reverse three sanctions orders and a related contempt order; they argue that the court abused its discretion in sanctioning them on two general grounds. First, they argue the evidence is insufficient to support the amount of monetary sanctions awarded against them. Second, they argue the trial court erred by imposing these sanctions without first testing less stringent ones or explaining why less stringent ones were insufficient to address their discovery abuse. Because we agree that the evidence is not sufficient to support the amount of monetary sanctions imposed, we reverse and remand on that ground.

Beyond this, Appellants argue that the trial court abused its discretion by refusing to defer payment of these monetary sanctions until the end of the litigation, when they could be appealed in due course, and that its refusal to do so left them with no choice but to nonsuit their claims due to the severity of the monetary sanctions. Though they acknowledge the remedy they seek from us is "unprecedented," Appellants ask us to reinstate their nonsuited claims so their lawsuit may proceed.

We reject Appellants' request for reinstatement for two independent reasons. They did not preserve this issue for our review. Nor do we as an appellate court possess the authority to reinstate their claims on this record.

On remand, we instruct the trial court to conduct a new hearing on the monetary sanctions, redetermining their amount based on the evidence the parties introduce.

## BACKGROUND

### Appellee's Motion for Death-Penalty Sanctions

Appellee moved to impose death-penalty sanctions on Appellants for discovery abuse. Appellee asked the trial court to strike Appellants' pleadings, disposing of their suit, and to impose $120,000 in monetary sanctions, apparently representing the total amount of attorney's fees incurred by Appellee thus far.

### Sanctions Hearing

The trial court held a hearing on the motion. At the hearing, Appellee argued that Appellants intentionally concealed and withheld documents that went to the heart of the case—past mold problems in Appellants' home. Appellee only learned of these documents years into the litigation when they took the depositions of third-party contractors hired by Appellants to address the mold.

Appellants, in turn, argued that the documents in question were not relevant. They also argued that these documents were not in their personal possession and, alternatively, that they did not disclose them out of inadvertence.

The trial court did not credit Appellants' explanations. It noted, for example, that in her deposition Bryan had denied the existence of e-mails between her and the

third-party contractors, rather than merely saying she did not possess any, even though she had one such e-mail communication a month before her deposition. Citing Appellants' "lack of candor," the trial court ruled that it was going to impose sanctions—but not the death-penalty sanctions requested by Appellee. It subsequently signed three separate orders to implement these lesser sanctions.

### The First Sanctions Order

In its first order, the trial court ordered Appellants to pay within 30 days the costs, expenses, and attorney's fees that Appellee incurred in connection with the depositions of the third-party contractors in the amount of $12,070.50. The trial court also ordered Appellants to pay the costs, expenses, and attorney's fees that Appellee incurred in the preparation and hearing of its motion for sanctions in the amount of $35,652. This second amount was due within 30 days of the entry of a subsequent order by the trial court either confirming the amount or modifying it. Finally, the trial court ordered Appellants to pay the costs, expenses, and attorney's fees incurred by Appellee in connection with any discovery that took place after the sanctions hearing. It directed Appellee to submit proposed orders as to these amounts, which would be due 30 days after the trial court signed an order.

### The Second Sanctions Order

In its second order, the trial court modified the $35,652 amount stated in its first order to $33,184. It ordered Appellants to pay this amount within 30 days.

4

**Appellants' Emergency Motion to Defer Payment of Sanctions**

In response to the trial court's first and second sanctions orders, Appellants moved to defer the payment of the sanctions until the entry of final judgment. Citing the Texas Supreme Court's decision in *Braden v. Downey*, Appellants argued that the monetary sanctions were so severe they lacked the ability to pay them and continue to pursue their claims. *See* 811 S.W.2d 922, 928–30 (Tex. 1991). Appellants supported their motion with a declaration signed by Tomaszewski, in which he stated that he and his wife lacked the assets to both pay the sanctions now and continue paying their lawyers to prosecute this suit. (His wife, Bryan, did not sign or submit a declaration in her name.)

**Emergency Motion Hearing**

The trial court held a hearing on Appellants' emergency motion. Consistent with their motion, Appellants asked the trial court to defer payment of the sanctions, arguing that they otherwise would have to abandon their suit. They did not challenge the sanctions on any other basis. Indeed, Appellants advised the trial court that their motion had "nothing to do with the merits of the sanctions."

Appellee contested Appellants' inability to pay the sanctions, and Appellee requested that the trial court order Appellants to produce financial records.

The trial court offered Appellants two alternatives. They could either (1) pay the sanctions as ordered, with the exception that payment of the $33,184 would be

deferred until the entry of a final judgment; or (2) agree to conduct an evidentiary hearing on their ability to pay the sanctions. Appellants agreed to the second of these alternatives, stating: "We would absolutely welcome the opportunity to hold an evidentiary hearing as the Court requests on the inability for [Appellants] to pay," during "which we could have testimony."

The trial court then ordered Appellants to produce financial records, such as pay stubs and bank statements, for the preceding 90 days. The evidentiary hearing was scheduled to take place about a week later, and the trial court stayed the payment of the $12,070.50, which otherwise would have become due in the interim.

### Appellants' Motion for Reconsideration

A few days after the hearing on their emergency motion, Appellants moved for reconsideration of the discovery and evidentiary hearing the trial court ordered. Citing our court's decision in *Owens–Corning Fiberglas Corp. v. Caldwell*, they argued that the trial court lacked the authority to order discovery under the circumstances. *See* 822 S.W.2d 143, 150 (Tex. App.—Houston [1st Dist.] 1991, orig. proceeding). Instead, Appellants asserted, the trial court could only defer the payment of the monetary sanctions or make written findings explaining why their payment prior to the entry of a final judgment would not preclude the litigation.

Contemporaneously with the filing of this motion, Appellants filed a letter with the trial court. The letter referred to their motion and also cited *Caldwell*.

6

**Appellants' Petition for a Writ of Mandamus**

Several days after filing their motion for reconsideration in the trial court, Appellants filed a petition for a writ of mandamus. In it, they argued that the trial court clearly abused its discretion and left them with no adequate remedy on appeal by failing to defer payment of the monetary sanctions and instead ordering discovery. As below, Appellants relied on *Braden* and *Caldwell* in support.

**Appellants' Nonsuit**

Two days later, while their motion for reconsideration remained unheard and their mandamus petition was undecided, Appellants nonsuited their claims. The trial court later signed an order recognizing Appellants' nonsuit of their claims.

**Denial of Mandamus Relief**

A week after Appellants nonsuited their claims, this court denied their petition for a writ of mandamus (without stating its reason or reasons for doing so). *See In re Tomaszewski*, No. 01-23-00920-CV, 2023 WL 8815149 (Tex. App.—Houston [1st Dist.] Dec. 21, 2023, orig. proceeding).

**Contempt Order**

On a motion filed by Appellee and after a hearing on that motion, the trial court signed an order holding Appellants in contempt for failing to pay the amounts owed under the first and second sanctions orders. The trial court also ordered

7

Appellants to pay costs, expenses, and attorney's fees incurred by Appellee in connection with its motion for contempt in the amount of $2,000.

**The Third Sanctions Order**

Consistent with the first sanctions order, Appellee moved to recover the discovery-related costs, expenses, and fees it incurred during the period between the sanctions hearing and Appellants' nonsuit of their claims. After a hearing on the motion, the trial court signed its third sanctions order, in which it ordered Appellants to pay $2,044 in costs and expenses and $5,637 in attorney's fees.

**DISCUSSION**

I.     **The evidence is insufficient to support the monetary sanctions.**

Appellants challenge the sufficiency of the evidence to support the monetary sanctions imposed by the trial court. In particular, they argue that no evidence in the record supports the amount of costs, expenses, and attorney's fees the trial court awarded against them as monetary sanctions for discovery abuse.

A.     **Standard of review**

We review a trial court's sanctions order for an abuse of discretion. *Brewer v. Lennox Hearth Prods., LLC*, 601 S.W.3d 704, 717 (Tex. 2020). The trial court abuses its discretion if, among other things, its decision lacks factual support. *Id.*; *see also Nath v. Tex. Children's Hosp.*, 446 S.W.3d 355, 361 (Tex. 2014) (trial court

generally does not abuse discretion as to sanctions if award is supported by sufficient evidence).

## B. Applicable law

A trial court may order a party to pay another's costs, expenses, and attorney's fees as sanctions for discovery abuse. TEX. R. CIV. P. 215.2(b)(2), (8), 215.3.

When a trial court imposes attorney's fees as a sanction, "there must be some evidence of reasonableness because without such proof a trial court cannot determine that the sanction is no more severe than necessary to fairly compensate the prevailing party." *Nath v. Tex. Children's Hosp.*, 576 S.W.3d 707, 709 (Tex. 2019) (internal quotation marks omitted). The party seeking fees as a sanction must "put forth some affirmative evidence of attorney's fees incurred and how those fees resulted from or were caused by the sanctionable conduct." *Id.* (internal quotation marks omitted). In other words, fees awarded as sanctions are still fees and are subject to the same general rules governing fee awards. *See id.* at 709–10.

Generally, a party seeking recovery of its attorney's fees must establish the reasonable hours spent by its counsel and the reasonable hourly rate for the work. *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 501–02 (Tex. 2019). To do so, the party must, at a minimum, submit evidence of "(1) particular services performed, (2) who performed those services, (3) approximately when the services were performed, (4) the reasonable amount of time required to perform the

services, and (5) the reasonable hourly rate for each person performing such services." *Id.* at 502. General or conclusory testimony cannot support a fee award. *Id.* at 501.

The party need not submit its counsel's billing records in order to recover its attorney's fees. *Id.* at 502. But in the absence of billing records or the like, the party must introduce other evidence—such as attorney affidavits or testimony—that provide the same information that the records otherwise would supply. *See id.*

Similarly, a party must introduce evidence of the reasonableness of costs and expenses it seeks to recover as sanctions. *See* TEX. R. CIV. P. 215.2(b)(8) (limiting recovery to "reasonable expenses"); *CHRISTUS Health Gulf Coast v. Carswell*, 505 S.W.3d 528, 539–40 (Tex. 2016) (Rule 215.2(b)(8) authorizes imposition of "reasonable expenses" as sanction); *see, e.g.*, *Thottumkal v. McDougal*, 251 S.W.3d 715, 718 (Tex. App.—Houston [14th Dist.] 2008, pet. denied) (affirming expenses, including fees, as sanctions based on evidence).

## C.  Analysis

### 1.  Appellants did not need to preserve error on this issue.

At the threshold, Appellee argues that Appellants have not preserved error as to whether sufficient evidence supports the amount of costs, expenses, and attorney's fees. But, under applicable law, Appellants may raise their evidentiary sufficiency complaint for the first time on appeal.

10

The standard of review for sanctions is abuse of discretion. *Brewer*, 601 S.W.3d at 717; *see also Chrysler Corp. v. Blackmon*, 841 S.W.2d 844, 852 (Tex. 1992) (abuse of discretion, not legal and factual sufficiency, is standard of review applicable to sanctions). However, when attorney's fees are imposed on a party as a monetary sanction, evidence of the reasonableness of the fees is required. *Nath*, 576 S.W.3d at 709.

Our court has repeatedly held that when the trial court sits as factfinder as to attorney's fees, challenges to the sufficiency of the evidence supporting the award, like any other evidentiary sufficiency issue arising from a matter tried to the bench, can be raised for the first time on appeal. *E.g.*, *Vo v. Nguyen*, No. 01-23-00559-CV, 2025 WL 1184229, at *2 n.2 (Tex. App.—Houston [1st Dist.] Apr. 24, 2025, no pet.); *Kroesche v. Wassar Logistics Holdings, LLC*, No. 01-20-00047-CV, 2023 WL 1112002, at *18 (Tex. App.—Houston [1st Dist.] Jan. 31, 2023, pet. denied); *see also In re K.A.M.S.*, 583 S.W.3d 335, 349 (Tex. App.—Houston [14th Dist.] 2019, no pet.) (same holding). In other words, no error preservation is required in this particular context. *See* TEX. R. APP. P. 33.1(d).

The same reasoning applies to the amount of costs or expenses. Appellants did not need to object below to present their challenge to the sufficiency of the evidence supporting the amount of costs or expenses either. *See id.*

11

**2.   The evidence of costs, expenses, and fees here is insufficient to support the award.**

In four separate orders, the trial court ordered Appellants to pay Appellee a total of $54,665.50. This amount was comprised of the following:

- $12,070.50 in costs, expenses, and attorney's fees—without stating subtotals for each of these three categories—incurred by Appellee in taking the depositions of three third-party contractors whom Appellants hired to provide services related to the mold found in their home;

- $33,184 in costs, expenses, and attorney's fees—without stating subtotals for each of these three categories—incurred by Appellee for the preparation of and hearing on its motion for death-penalty sanctions;

- $2,000 in costs, expenses, and attorney's fees—without stating subtotals for each of these three categories—incurred by Appellee in connection with its motion to hold Appellants in contempt for failing to pay the preceding monetary sanctions awarded when they became due; and

- $2,044 in costs and expenses and $5,367 in attorney's fees for supplemental discovery conducted after November 1, 2023.

The appellate record contains some evidence supporting some of these sums. For instance, the billing records submitted to the trial court (for in camera review) by Appellee in support of its request for $35,652 in costs, expenses, and fees (reduced to $33,184 by the trial court) have been filed with this court under seal. In addition, the record contains invoices for the $2,044 in costs and expenses from a records service that Appellee's counsel hired to assist with securing documents by

12

subpoenas duces tecum. But the record contains no evidence supporting the other three amounts of $12,070.50, $2,000, and $5,367.[1]

Moreover, even the billing records that we have are, on their face, some but insufficient evidence of the amount stated. To support a fee request, a party must not only submit evidence of the number of hours worked and the hourly rates of those

---

[1] In a trial-court motion filed by the appellee, it represented that it was having "attorney fee invoices" totaling $5,367 "for discovery conducted after November 1, 2023" delivered to the trial court "for in camera review." And in its third sanctions order, which awarded that exact amount in fees, the trial court recited that it had reviewed "contemporaneous time records" in camera. But unlike the billing records for the $35,652 in costs, expenses, and fees, which have been filed with this court under seal and therefore are in the record, the billing records for the $5,367 in attorney's fees have not been filed with our court under seal or otherwise.

Appellants do not assert the trial court erred in allowing Appellee to submit its attorney's billing records in camera; that issue is not before us. We nonetheless note that doing so may short-circuit the usual procedure for presenting and adjudicating fee-shifting requests, in which the side from whom the fees are sought can review the evidence supporting the fees, cross-examine opposing counsel to the extent it is appropriate, and contest the reasonableness and necessity of the fees. *See Rohrmoos Venture*, 578 S.W.3d at 502–03 (stating that creation of billing records "makes them available for production, provides a basis for testifying as to the reasonableness and necessity of the requested fees, and permits cross-examination" and advising parties to "use discovery and pretrial procedure to evaluate attorney's fees claims and the evidence supporting them"). To the extent an in camera review impairs these rights, it could risk reversal. *See Liberty Bankers Life Ins. Co. v. AIL Inv., L.P.*, No. 02-23-00212-CV, 2024 WL 2854776, at *15 (Tex. App.—Fort Worth June 6, 2024, pet. denied) (concluding that trial court abused discretion by considering unredacted fee statements submitted in camera in assessing attorney's fees because other side was not provided with the statements and therefore could not dispute them); *see also CSFB 1998-PI Buffalo Speedway Office, Ltd. P'ship v. Amtech Elev. Servs. Co.*, No. 01-08-00639-CV, 2010 WL 3294287, at *7 (Tex. App.—Houston [1st Dist.] Aug. 19, 2010, no pet.) (Massengale, J., concurring) (objecting to in camera submission of billing records, noting, among other things, that party that did so had provided "no authority" on appeal that authorized or condoned "process of supporting a fees request with records that have been withheld from the opposing party").

performing the work, but also of the reasonableness of these figures. *See Rohrmoos Venture*, 578 S.W.3d at 501–02 (mandating evidence of the reasonableness of the amount of time spent performing the services and the rates of those who performed them). This necessarily entails more than the recitation of the hours expended and hourly rates; some justification of their reasonableness must also be proffered—for example, that "x" number of hours is an appropriate number of hours to spend drafting a summary-judgment motion in light of the complexity of the claims and the stakes of the case, and that "y" rate is appropriate in light of the credentials and experience of the person drafting the motion. No testimony as to reasonableness was adduced in the trial court, and the billing records were not accompanied by an affidavit or declaration addressing reasonableness.

In sum, we are presented with a record that contains some evidence supporting the $54,665.50 in costs, expenses, and attorney's fees awarded by the trial court but not enough evidence to sustain the award. When, as here, there is some but insufficient evidence, our Supreme Court has instructed that the award must be reversed and remanded in order to allow the parties to relitigate the proper amount of the award. *See Carswell*, 505 S.W.3d at 540–41 (reversal and remand is correct relief when record contains some but insufficient evidence to support monetary sanctions); *see also Rohrmoos Venture*, 578 S.W.3d at 506 (reversing and remanding

"to the trial court for a redetermination of fees" because fee evidence was insufficient).

## II.     The trial court did not refuse to consider less stringent sanctions.

To clarify the scope of our reversal, we briefly turn to Appellants' separate argument that we independently must reverse because the record does not show the trial court tested less stringent sanctions and explained why less stringent sanctions could not remedy their discovery abuse. We disagree with Appellants here: the record shows no reversible error on this ground. The court actually imposed a lesser sanction.

### A.     Applicable law

A sanction for discovery abuse ought to be no more severe than necessary to serve its legitimate purposes, "which include securing compliance with discovery rules, deterring other litigants from similar misconduct, and punishing violators." *Spohn Hosp. v. Mayer*, 104 S.W.3d 878, 882 (Tex. 2003). Thus, a trial court must consider the availability of less stringent sanctions and whether they will suffice. *Schindler Elevator Corp. v. Ceasar*, 670 S.W.3d 577, 589 (Tex. 2023). But a trial court is neither required to test the sufficiency of lesser sanctions by imposing all conceivable lesser sanctions nor to list all these less stringent possibilities in an order imposing a discovery sanction and then explain why each one is insufficient under the circumstances. *Cire v. Cummings*, 134 S.W.3d 835, 842 (Tex. 2004).

**B.     Analysis**

In its motion seeking sanctions, Appellee asked the trial court to do two things in response to Appellants' discovery abuse. First, Appellee sought the imposition of a so-called death-penalty sanction; specially, Appellee requested that the trial court strike Appellants' pleadings, arguing that no lesser sanction would remedy the harm caused by the abuse. Second, Appellee requested that it be awarded $120,000 in attorney's fees, which ostensibly represented the amount of reasonable and necessary fees incurred to date defending against the suit.

The trial court, however, declined to impose either of these sanctions. Instead, as explained above, the court ultimately ordered Appellants to pay $54,665.50 in costs, expenses, and attorney's fees to Appellee as a sanction for their discovery abuse. In short, here, the trial court imposed a less stringent sanction than requested. *See Schindler*, 670 S.W.3d at 588–89 (trial court's imposition of $25,000 sanction in lieu of $100,000 sanction requested by party was less stringent sanction); *Cire*, 134 S.W.3d at 840 (ordering discovery, taxing costs of discovery, and awarding attorney's fees are all examples of sanctions that are less stringent than death-penalty sanction).

To the extent Appellants argue that the trial court had to consider some still lesser sanction, we note that Texas law does not require a trial court to test every conceivable lesser sanction before imposing a discovery sanction. *Cire*, 134 S.W.3d

16

at 842. Finally, for the reasons explained above, we remand here for a new trial on the costs, expenses, and attorney's fees awarded as a sanction. Appellants will thus have an opportunity to litigate excessiveness as to these amounts on remand, as well. *See Schindler*, 670 S.W.3d at 589 (sanctions must not be excessive or too severe).

## III. Appellants are not entitled to reinstatement of their claims.

Appellants next argue that the trial court abused its discretion by not allowing them to defer payment of the monetary sanctions imposed against them until the entry of a final judgment and instead ordering discovery about their ability to pay the sanctions. Given the severity of the monetary sanctions, Appellants argue, they had no choice but to nonsuit their claims. As a remedy, they ask us to reinstate them.

### A. Standard of review

Like a trial court's order imposing sanctions, we likewise review its refusal to defer their payment until the entry of a final judgment for an abuse of discretion. *See Galindo v. Prosperity Partners, Inc.*, 429 S.W.3d 690, 697 (Tex. App.—Eastland 2014, pet. denied) (reviewing for abuse of discretion when refusal to defer payment of sanctions and associated dismissal of claims was raised on direct appeal).

### B. Applicable law

Subject to good-faith pleading requirements, when a party contends that monetary sanctions are so severe that they effectively preclude access to the court, the trial court must either (1) make the sanctions payable no sooner than when it

signs a final, appealable judgment; or (2) make written findings, after a prompt hearing, as to why the sanctions do not prevent the party from pursuing the case. *In re Casey*, 589 S.W.3d 850, 855 (Tex. 2019); *see also Braden*, 811 S.W.2d at 929 (adopting standard applied by supreme court in *Casey*). When a trial court fails to follow this procedure, the sanctioned party is generally entitled to mandamus relief. *See Casey*, 589 S.W.3d at 853–56 (conditionally granting writ and instructing trial court to modify order to defer payment of $8,251.50 sanction); *Braden*, 811 S.W.2d at 928–31 (granting same relief as to $10,000 sanction).

While a trial court's failure to follow this procedure is generally raised in the context of mandamus proceedings, relief may be available on direct appeal as well. For example, if the trial court imposes a severe monetary sanction, requires immediate payment, and dismisses a party's claims for nonpayment, the sanctioned party could potentially obtain reversal of the sanctions order and the dismissal on appeal. *See Galindo*, 429 S.W.3d at 697–99 (holding trial court abused its discretion by failing to follow procedure required by *Braden* and by dismissing case based on nonpayment of monetary sanctions; reversing and rendering take-nothing judgment as to monetary sanctions and otherwise remanding case for further proceedings).

### C. Analysis

#### 1. Appellants did not preserve error on this issue.

Appellants moved to defer the payment of the monetary sanctions until the entry of a final, appealable order, but they did not secure a ruling on their motion from the trial court. A ruling or a refusal to rule is required to preserve error. *See* TEX. R. APP. P. 33.1(a)(2) (requiring ruling or refusal to rule); *In re Zenergy, Inc.*, 968 S.W.2d 1, 11 (Tex. App.—Corpus Christi–Edinburg 1997, orig. proceeding) (relators in mandamus proceeding had waived issue by failing to complain about or obtain ruling "on their inability to pay the sanctions or that payment would preclude their ability to continue with the litigation").

It is undisputed that the trial court held a prompt hearing on Appellants' motion to defer the payment of sanctions. But Appellants argue that by ordering discovery on their ability to pay the sanctions, rather than immediately ruling on their motion (before they moved to nonsuit nine days later), the trial court refused to rule. They rely on *Caldwell*, in which our court held that a trial court abused its discretion by compelling the production of discovery as to the sanctioned party's ability to pay. 822 S.W.2d at 150. There, our Court stated that while *Braden* "requires a sanctioned party claiming preclusion of court access to produce evidence and witnesses in support of its claim in order to prevail," *Braden* "does not authorize the judge to compel production of the evidence" on ability to pay the sanctions. *Id.*

But on the record before us, we do not agree that the record shows that the trial court refused to rule. At the hearing on Appellants' motion, the trial court gave Appellants two options: (1) pay the monetary sanctions as ordered, except that payment of the $33,184 from the second sanctions order would be deferred until a final judgment was signed; or (2) hold a second, evidentiary hearing on Appellants' ability to pay the sanctions, which would entail additional discovery on that subject. Rather than object that this amounted to a refusal to rule or a *Caldwell* problem (or on any other basis), counsel for Appellants replied, "We would absolutely welcome the opportunity to hold an evidentiary hearing as the Court requests on the inability for my clients to pay which we could have testimony and suspend the requirement for attorney's fees in the interim."

Days later, Appellants moved for reconsideration and a filed a letter with the trial court objecting to the discovery at issue based on *Caldwell*. But the record does not show that Appellants set their motion for reconsideration for hearing, set it for submission on the papers, or otherwise brought the motion to the trial court's attention for a ruling, and a trial court is not required to consider a motion that is not called to its attention. *Metzger v. Sebek*, 892 S.W.2d 20, 49 (Tex. App.—Houston [1st Dist.] 1994, writ denied). Similarly, the record does not show that their letter came to the trial court's attention. Finally, the record also does not show that the trial

court ruled on the motion for reconsideration or refused to rule on it. Instead, just six days later, Appellants nonsuited their claims.

When, as here, the record shows no more than the mere filing of a motion and letter in the papers of the case, but not that they were presented for a ruling, error is not preserved. *See* TEX. R. APP. P. 33.1(a)(1), (2) (record must show party raised complaint by timely motion and trial court ruled or refused to rule on motion); *see also Noel v. Oakbend Med. Ctr.*, No. 01-21-00206-CV, 2022 WL 3031347, at *7 (Tex. App.—Houston [1st Dist.] Aug. 2, 2022, pet. denied) ("Simply filing a motion or even setting the motion for hearing is insufficient to preserve error if the record does not also show the motion was brought to the trial court's attention."); *Metzger*, 892 S.W.2d at 49 (motion must be called to trial court's attention).

### 2.    In any event, we lack the authority to reinstate nonsuited claims.

Even if Appellants had preserved for our review the argument that the trial court failed to comply with *Braden* and its progeny, we nonetheless lack the authority to grant the relief that they request—reinstatement of their dismissed claims—on the record before us.

The courts of appeals are primarily courts of review. *City of Dallas v. Dixon*, 365 S.W.2d 919, 923 (Tex. 1963), *rev'd on other grounds sub nom. Donovan v. City of Dallas*, 377 U.S. 408 (1964); *Chevriere v. Mitchell*, No.01-18-00761-CV, 2019 WL 1996498, at *2 (Tex. App.—Houston [1st Dist.] May 7, 2019, no pet.). The

21

types of judgments we may issue reflect this role. *See* TEX. R. APP. P. 43.2 (authorizing courts of appeals to affirm, modify and affirm, reverse, and vacate trial court judgments or dismiss appeal). We can reverse when the trial court erred and its error probably caused the rendition of an improper judgment (or probably prevented the proper presentation of the appeal). *See* TEX. R. APP. P. 44.1(a).

Here, Appellants nonsuited their claims. When they did so, the trial court had no choice but to grant their nonsuit and dismiss their claims, which it did. *See* TEX R. CIV. P. 162; *Tex. Mut. Ins. Co. v. Ledbetter*, 251 S.W.3d 31, 37 (Tex. 2008) (agreeing that trial court had no choice but to grant plaintiffs' nonsuit and dismiss their claims because plaintiffs had "an absolute right to nonsuit *their own* claims").

Under these circumstances, Appellants' request for reinstatement of their claims is tantamount to asking us to reverse the trial court for doing the only thing it could have done in response to Appellants' unilateral nonsuit of their own claims. The invited error doctrine precludes us from doing so. *See In re G.X.H.*, 627 S.W.3d 288, 301 (Tex. 2021) (party cannot complain of ruling it specifically requested). For this reason, parties who nonsuit their claims generally cannot challenge their nonsuit or the trial court's corresponding dismissal on appeal. *Est. of Nunu*, 542 S.W.3d 67, 81–82 (Tex. App.—Houston [14th Dist.] 2017, pet. denied); *In re Energy Transfer Fuel, L.P.*, 298 S.W.3d 361, 365 (Tex. App.—Tyler 2009, orig. proceeding).

22

Appellants try to avoid this outcome by arguing that their nonsuit was not voluntary under the circumstances. They assert that they had no choice but to discontinue the litigation and nonsuit their claims, given the severity of the monetary sanctions imposed by the trial court. But the record does not support their assertion.

As noted, shortly after the trial court ordered discovery on Appellants' ability to pay the monetary sanctions imposed against them, Appellants moved for reconsideration. Four days later, they filed a petition for a writ of mandamus in this court requesting that a prior panel of this Court direct the trial court to defer payment of sanctions until the rendition of a final judgment and vacate its order for additional discovery on Appellants' ability to pay. Yet just two days afterward—while their motion for reconsideration remained unaddressed and their mandamus petition was still pending—Appellants nonsuited their claims.

On this record, Appellants cannot claim that they had no choice but to nonsuit their claims due to the severity of the monetary sanctions. When Appellants did so, it remained unresolved whether they would have to pay these sanctions before the trial court signed a final judgment. Appellants not only voluntarily dismissed their claims, but they did so before they had exhausted their efforts—both in the trial court and here—to secure deferral of the sanctions.

This case is therefore distinguishable from *Galindo*, in which the trial court dismissed the plaintiffs' claims due to the failure to pay severe monetary sanctions.

*See Galindo*, 429 S.W.3d at 697–99. Here, Appellants nonsuited their claims while it remained possible that payment of the sanctions might be deferred. Hence, we reject their argument that the trial court's monetary sanctions (at the applicable time) forced them to nonsuit their claims and made dismissal of their claims involuntary.

## CONCLUSION

We reverse the sanctions orders signed by the trial court on November 6, 2023, November 21, 2023, and April 30, 2024, as well as the contempt order signed by the trial court on March 28, 2024. We remand for further proceedings consistent with our opinion. We instruct the trial court to redetermine the amount of costs, expenses, and attorney's fees assignable as sanctions for discovery abuse.


Jennifer Caughey
Justice

Panel consists of Justices Guerra, Caughey, and Dokupil.